IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALISON HARDIMAN, | ) | |
|       Plaintiff, | ) ) ) | |
| v. | ) ) | No. 18 CV 5702 |
| CHARLOTTE A. BURROWS, CHAIR of the U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) ) | Judge John J. Tharp, Jr. |
|       Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alison Hardiman sues the Chair[1] of her employer, the Equal Employment Opportunity Commission ("EEOC"), for the very wrongdoing the agency is tasked with fighting. Hardiman asserts that the EEOC discriminated against her on the basis of race and sex when it failed to promote her, undercompensated her, and provided insufficient assistance with a large IT project that she was managing.

Having brought the promotion-based claims to the attention of the EEOC five years too late, Hardiman cannot pursue them. At its peril, however, the EEOC overlooks Hardiman's strongest evidence of discrimination: that the EEOC was undercompensating her relative to a comparable employee of a different race and gender. From the evidence Hardiman presents, a reasonable juror could find that the EEOC was paying her less for performing the same duties as her white male counterpart. Without an apparent reason in the record to explain this disparity, the

---

[1] The Clerk is directed to substitute Charlotte A. Burrows for Victoria Lipnic as the Chair of the Equal Employment Opportunity Commission. *See* Fed. R. Civ. P. 25(d).

EEOC is not entitled to judgment on that claim. As to that claim, the jury will be in the best position to watch the watchmen.

By contrast, Hardiman cannot pursue any claims based on her perception that the EEOC inadequately helped her with the IT project. Rather than discriminate against Hardiman, the EEOC addressed her concerns to no avail. Hardiman's frustrations with an overwhelming project and her own unhappiness with the EEOC's response do not amount to an adverse employment action that supports a discrimination claim. And Hardiman does not provide any evidence that the EEOC provided her less assistance than anyone of a different race or sex. The Court therefore grants in part and denies in part defendant's motion for summary judgment [59].

## BACKGROUND

Hardiman, an African American woman, began working as an IT specialist at the EEOC's Chicago district office in 2007. As a government employee, Hardiman was subject to the General Schedule classification and pay system. Government agencies, including the EEOC, classify the grade of any job position based on the required responsibility and qualifications. Hardiman began working at the EEOC at the GS-7 level and was promoted to the GS-9 level about a year later. At the GS-9 level, Hardiman's job duties included providing technical assistance to EEOC staff and providing network support for the office.

Between 2007 and 2010, Hardiman worked with and supported a senior IT specialist, Timothy Wojtusik. Wojtusik, who is a white man, began working at the GS-11 level when the EEOC hired him and was promoted to the GS-12 level a year later. His duties included managing the IT tasks for the district and providing technical support for the enforcement and legal units. Wojtusik also worked with the EEOC Office of Information Technology ("OIT") to manage and plan district-wide IT projects. During his time at the EEOC, Wojtusik managed an office-wide

migration to Windows XP software. In 2010, Wojtusik transferred to an office in another EEOC district.

After Wojtusik left, Hardiman interviewed for the GS-11/12 IT Specialist vacancy. On January 13, 2011, Julianne Bowman, the Director of the Chicago district office, and Debra Wilson-Sumbry, the District Resources Manager, selected Hardiman for the position (though further approval was required). Six days later, however, a Human Resources specialist informed Bowman that an agency-wide hiring freeze went into effect. The EEOC did not initially inform Hardiman of the status of her application, and Hardiman followed up with management at the EEOC headquarters in an effort to determine whether she had been selected. In April 2011, a different Human Resources specialist told Hardiman that she had been selected for the position. On May 16, 2011, however, the EEOC sent Hardiman a letter informing her that the agency cancelled or postponed filling the GS-11/12 vacancy. No evidence in the record reflects whether or when the hiring freeze was lifted, but no one has filled the vacancy created when Wojtusik left.

Almost five years after the EEOC informed Hardiman about the hiring freeze, Hardiman was tasked with managing the migration of the Chicago office software to Windows 7. OIT scheduled the migration for November 17 through 20, 2015. In the months leading up to the migration, OIT personnel communicated with Hardiman to ensure preparation went smoothly.

To assist Hardiman with the migration, OIT sent an independent contractor technician to Chicago.[2] In addition, an EEOC Milwaukee Office IT Specialist assisted Hardiman on the first

---

[2] Hardiman asserts that OIT initially sent only one technician to assist her and that she had to implore the EEOC to send another person to help her. The EEOC insists that OIT sent two technicians to assist (even though it had originally promised three technicians). Of course, at summary judgment, the Court views the facts in the light most favorable to Hardiman, the non-moving party. *See Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

3

day of migration. OIT also made seven remote support staff available to assist Hardiman. Two IT specialists were assigned for each day of the migration, and one had a "floating" schedule.[3]

At the end of the first day of the migration, a senior OIT chief checked in with Hardiman over email because she heard that the Chicago office was experiencing issues. Hardiman replied the next morning, asking for another set of hands and detailing many problems. The senior OIT chief replied that night, describing troubleshooting steps that Hardiman could take, advising her that she would make more technicians from the OIT office available (in addition to the Chicago technicians who were already standing by), and stating that she would provide another technician to assist on site. The OIT followed up on that promise. Even so, Hardiman continued to experience problems with the migration and sent emails to OIT voicing her frustration. OIT staff replied with emails expressing their understanding of her exasperation in managing such a large project and committing to support her. On the last day of the migration, one OIT technician expressed concern that the migration was too much for one employee to handle and suggested that the Chicago office look into hiring another specialist.

To respond to the concerns that Hardiman raised, the EEOC extended the contracts of the two original technicians to assist with post-migration problems. In addition, eleven OIT staff were made available as remote help-desk technicians throughout the migration and for a month after it was completed. Despite the problems, the EEOC completed its software upgrade at the end of

---

[3] Hardiman asserts that OIT made remote staff available only after she asked for more help, but she does not raise a ***genuine*** dispute of material fact on that issue. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An OIT staff member copied Hardiman on an email that listed the names and schedules of the support staff that would be available to assist four days before the migration. From that evidence, no reasonable juror could find that the remote workers were only made available days into the migration.

2015. Hardiman did not receive any reprimands or discipline as a result of the migration-related saga; in fact, Bowman thanked her for all of her hard work.

Hardiman has managed every migration in the Chicago district office since Wojtusik left in 2010. The EEOC had not hired or promoted anyone to fill Wojtusik's vacant GS-11 position from the time that Wojtusik departed to the time that Hardiman filed this lawsuit.

On November 20, 2015, the last day of the Windows 7 migration, Hardiman contacted an Equal Employment Opportunity ("EEO") counselor and filed a complaint with the EEOC, alleging sex and race discrimination. To support her claims, Hardiman alleged that she was unlawfully denied promotion, underpaid, and that she was denied assistance with large migration projects. In May 2018, the EEOC issued a final order in favor of the agency. It accepted the conclusion of the Administrative Law Judge that some of Hardiman's claims were time barred and that she did not state an actionable claim of discrimination for the others.

Hardiman filed this lawsuit in August 2018 and amended her complaint in November 2018 after obtaining counsel. In her amended complaint, Hardiman pursued claims premised on violations of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act. Hardiman alleged that Bowman and the EEOC concealed from her the fact that she was selected for promotion. She also alleged that she was performing the tasks of an employee at a GS-11 pay grade despite being paid only for a GS-9 position. Finally, Hardiman alleged that the EEOC discriminated against her by failing to provide her with the assistance she requested and by treating her differently than employees of a different race or sex. This Court dismissed Hardiman's claims premised on the Equal Pay Act for lack of subject-matter jurisdiction. The EEOC now moves for summary judgment, arguing that Hardiman's claims based on the 2011 promotion are time barred and that her claims based on the 2015 migration are not actionable discrimination claims.

**DISCUSSION**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Hardiman survives summary judgment only if the evidence she presents "would permit a reasonable factfinder to conclude that [her] race [or] sex . . . caused the . . . adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In addition, Hardiman cannot defeat summary judgment if the EEOC "show[s] that there is no genuine dispute of material fact as to whether [she] timely" exhausted her administrative remedies. *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 744 (7th Cir. 2021). The Court addresses the administrative exhaustion issues before moving to the merits.

**I.     Promotion-Based Claims**

Hardiman first claims that the EEOC concealed that it selected her for a promotion from a GS-9 to GS-11 pay grade. Due to this allegedly secret promotion, Hardiman claims that she has been performing GS-11 tasks while being paid a GS-9 salary. Hardiman's amended complaint did not specify when this surreptitious promotion occurred, but discovery revealed that Bowman and Wilson-Sumbry selected her for the GS-11/12 position on January 13, 2011. A federal employee must bring a complaint to an EEO counselor within forty-five days of the allegedly discriminatory act. 29 C.F.R. § 1614.105(a)(1); *see also Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008). Unless circumstances beyond the employee's control justify equitable tolling of the 45-day window, the court must dismiss a suit that an employee did not timely bring to the EEO counselor's attention. 29 C.F.R. § 1614.105(a)(2); *Lapka*, 517 F.3d at 981. Hardiman's claim appears time barred because she did not raise this issue with an EEO counselor until November 20, 2015, almost five years after her alleged promotion.

Hardiman argues that the EEOC's concealment justifies tolling the forty-five-day window. A claim may be equitably tolled when "despite all due diligence, a plaintiff cannot obtain the information necessary to realize that [s]he may possibly have a claim." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860 (7th Cir. 2005). But as Hardiman herself admits, her selection for promotion was no secret. Nor was the fact that, despite her selection, she received neither new title nor additional compensation. In an affidavit supporting her EEO Complaint, Hardiman averred that an EEOC employee told her she was selected for promotion in April 2011. And Hardiman admitted that in May 2011, the EEOC notified her that it was no longer filling the GS-11/12 position due to a hiring freeze. The undisputed facts demonstrate that Hardiman knew in 2011 that the EEOC selected her for promotion yet could not implement the promotion in practice. The EEOC did not conceal anything from Hardiman, let alone anything that would justify tolling her claim for almost five years.

Hardiman insinuates that the hiring freeze was actually a pretext for *failing* to promote her because the EEOC hired five or six people between December 2010 and May 2011. Apart from directly contradicting Hardiman's position that the EEOC *did* surreptitiously promote her, that position does not solve her timeliness problem. Even if equitable tolling were justified, the clock starts when "a reasonable person in the plaintiff's position would have been aware of the *possibility* that [s]he had suffered an adverse employment action because of illegal discrimination." *Beamon*, 411 F.3d at 860-61. If Hardiman believed that the EEOC improperly passed her over for promotion or improperly failed to implement her promotion in May 2011, she should have pursued her EEO complaint at that point. Again, Hardiman waited for almost five years to pursue her claim, and it is therefore time barred. Hardiman therefore cannot hold the EEOC liable for claims of non-promotion, and the Court grants the EEOC summary judgment on those claims.

## II. Pay-based Claims

The EEOC's failure to promote her was not Hardiman's only evidence of discriminatory conduct; she also asserts that she was paid less than another employee for doing the same work. Despite admitting that Hardiman's claims are partially based on the EEOC's disparate treatment "with regards to salary," the EEOC brushes past Hardiman's allegations of pay discrimination. Def.'s Resp. to Pl.'s Local Rule 56.1 Statement ¶ 14, ECF No. 74. From the beginning of this litigation, however, Hardiman has contended that the EEOC paid her at the GS-9 level for performing the duties of a GS-11 employee: *i.e.*, unequal pay for equal work. The EEOC correctly observes that the Court has already dismissed Hardiman's claims premised upon an Equal Pay Act theory. But the Seventh Circuit has also construed similar claims of unequal pay as evidence of unlawful discrimination under Title VII. S*ee Poullard v. McDonald*, 829 F.3d 844, 851, 854 (7th Cir. 2016) (treating as a Title VII "pay-disparity case" plaintiff's allegations that another employee "was paid at the GS-13 level, while he was paid at the GS-11 level for doing [another employee's] managerial work"). Indeed, in her opposition to summary judgment, Hardiman reiterates that she "currently performs the duties of a[n] IT specialist GS-11/12, but is paid a GS-9 salary." Pl's Memo. in Opp'n at 2, ECF No. 66. The EEOC does not address that argument in its reply, maintaining that any claim based on unequal pay has been dismissed or is time barred.

Hardiman invokes the Lily Ledbetter Act of 2009 to argue that she timely exhausted claims based on disparate pay, asserting that her claims under the Equal Pay Act and Title VII "were intertwined."[4] *Id.* at 3. Pursuant to the Lily Ledbetter Act, "an unlawful employment practice,"

---

[4] Hardiman also declares that "there was potential waiver of the timeliness defense," but does not indicate how or when the EEOC waived it. Pl's Memo. in Opp'n at 3, ECF No. 66. Such unsupported and undeveloped arguments are themselves waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

8

including one that violates Title VII, "occurs each time a person is paid pursuant to a discriminatory compensation decision or practice." *Poullard*, 829 F.3d at 851; 42 U.S.C. § 2000e-5(e)(3)(A). Hardiman's claim "is timely if at least one unlawful employment practice—including the receipt of a single paycheck—occurred during the 45 days preceding [her] consultation with the counselor." *Id.* at 853. And Hardiman alleged that the discriminatory pay was continuing to occur when she filed her EEO complaint. Based on these allegations, the EEOC found in its final administrative order that her claims of discriminatory compensation were timely filed. The Court agrees that Hardiman timely brought a Title VII claim based on evidence of disparate compensation.

Having established that Hardiman's claim based on disparate pay is timely, the Court addresses the merits. "When pursuing an unequal pay claim, the plaintiff must show that the protected grounds—here, race [and sex]—caused the disparity in compensation." *Palmer v. Indiana Univ.*, 31 F.4th 583, 589 (7th Cir. 2022). In assessing Title VII claims based upon evidence of disparate pay, the Court considers all the evidence in the record, "eschewing any framework or formula." *Id.* (quoting *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021)). Here, a reasonable jury could find a disparity in compensation between Hardiman and a similarly situated employee.

"An unequal pay claim begs for some comparator evidence: *unequal to what*?" *Id.* at 590. An apt comparator is "an employee who is directly comparable to the plaintiff 'in all *material* respects.'" *Id.* (quoting *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008)). Hardiman points to Wojtusik, arguing that the EEOC paid him, a white male, on a GS-11 scale when she performed the same work at a lower pay scale. The EEOC protests that Wojtusik is not a materially similar comparator. According to the EEOC, Wojtusik held a higher ranked position than

Hardiman, Wojtusik had different job duties, and neither he nor any other employees outside of Hardiman's protected class were promoted or subject to a pay raise. Those facts may have been true in 2010. At that time, the EEOC could not have paid Hardiman more even if EEOC management desired to do so; the hiring freeze tied its hands.

But this story did not end in 2010. Hardiman alleges that, in 2015 and beyond, the EEOC was not paying her fairly. On that claim, Hardiman could convince a reasonable jury that the EEOC paid her less than Wojtusik for equivalent work. *See Poullard*, 829 F.3d at 854 (noting that a disparate pay inquiry "boils down to a showing of equal work for unequal pay"). The lower pay element is easily met here. Neither party disputes that Hardiman was earning a GS-9 level salary in 2015 while Wojtusik was earning a GS-12 level salary in 2010. The relevant question is whether Wojtusik's job in 2010 was materially similar to Hardiman's job in 2015.

A reasonable juror could answer that question in the affirmative. In evaluating comparators, courts frequently consider "whether the employees in question had the same job description, were subject to the same standards, had the same supervisor, and had comparable experience, education, and other qualifications." *Id.* at 855. Starting with the first factor, Hardiman may have been subject to a different pay grade than Wojtusik, but "job title alone is not dispositive" when the comparative employees' responsibilities are the same. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007). Indeed, the crux of Hardiman's claim is that her job description did not reflect her work in practice.

Hardiman has also presented evidence from which a reasonable juror could infer that she was subject to the same standards as Wojtusik was when she was managing the 2015 migration. According to the GS-11 job description that Hardiman submits, the major duties of a GS-11 specialist include "provid[ing] the full range of support, management and oversight of the office's

10

use of the agency's technology-systems," "coordinat[ing] between OIT, IT staff and other staff in reporting offices, and District Office management to determine hardware and software needs of the entire District," and "serv[ing] as the primary liaison with OIT, OFP, reporting offices and contractors on IT equipment installation, maintenance and upgrades." GS-11 Job Description, Ex. E to Pl.'s Local Rule 56.1 Statement, ECF No. 68-5. Those responsibilities map neatly onto Hardiman's job duties during the 2015 migration. Email correspondence shows that Hardiman was providing IT support to over 100 users while simultaneously acting as the liaison between OIT and the Chicago office. And the EEOC admits that Hardiman was the main point of contact for both the 2015 migration and every other migration since Wojtusik left the Chicago district office. From that evidence, a reasonable juror could find that Hardiman and Wojtusik were subject to the same standards.

Hardiman has also presented evidence in support of the last two comparator factors. Questions of fact remain as to whether Wojtusik and Hardiman worked at the same level of supervision. *Cf. Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (holding that an employee who worked in a managerial position was not a similarly situated comparator to subordinate employee plaintiff). Wojtusik admits that he did not supervise Hardiman when they worked together, and both Hardiman and Wojtusik listed the EEOC District Director as a direct supervisor in affidavits submitted to the EEO Counselor. That Hardiman was selected for the GS-11 position in 2010, moreover, strongly suggests that she met the qualifications for the position in 2015. After all, Hardiman only gained more experience and qualifications in the five years following her selection for promotion.

A reasonable juror could therefore find that the EEOC was paying Hardiman, an African American woman, less for the same work that Wojtusik, a white man, performed. Of course, racial

11

discrimination is not the only conceivable explanation for that pay disparity. For instance, if the record reflected that the hiring freeze were still in place or that the EEOC had no plans to hire a second IT specialist, racial animus would be a less plausible explanation for keeping Hardiman at the same pay grade. But the EEOC provides no competing explanation for the pay disparity between similarly situated employees—each of whom, a jury could find, served as the senior IT resource for the Chicago office. In fact, the EEOC admits that it has not filled the GS-11 position that Wojtusik has left vacant. Whether discriminatory animus motivated the EEOC's decision to pay Hardiman unequally therefore remains a question of fact for the jury to decide. *See Orton-Bell v. Indiana*, 759 F.3d 768, 778 (7th Cir. 2014) (reversing grant of summary judgment on discrimination claim where defendant did not "seriously offer[] a reason" for the disparate treatment of similarly situated employees of different sexes).

In sum, to the extent that Hardiman wishes to pursue a Title VII claim based on evidence of a pay disparity in 2010, her claim fails because a hiring freeze implemented at that time did not affect her comparator's compensation. Hiring freezes, however, are temporary by nature; what is frozen eventually thaws out. Without anything in the record to suggest that the hiring freeze remains in place, nothing explains why the EEOC continued to pay Hardiman less than her white male counterpart for years after the hiring freeze was implemented. The Court therefore denies summary judgment on Hardiman's Title VII claim based on disparate compensation.

### III. Failure-to-Assist Claim

Hardiman also claims that the EEOC unlawfully discriminated against her when it failed to provide her with adequate assistance with the 2015 migration to Windows 7. She relies on the familiar *McDonnell Douglas* burden-shifting framework (which, as the Seventh Circuit has emphasized, is not a legal standard, a legal requirement, or a type of evidence, *see Ortiz*, 834 F.3d at 765-66) to prove her case. Under that framework, a plaintiff may establish a prima facie case of

discrimination by showing that "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 807 (7th Cir. 2017) (quoting *Burks v. Wisconsin Dep't of Transportation*, 464 F.3d 744, 750-51 (7th Cir. 2006)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate reason for the employment action. *Id.* The plaintiff must then offer evidence to show that the defendant's offered reason is a pretext for discrimination. *Id.*

Although the EEOC concedes that Hardiman timely exhausted her migration claim, the EEOC challenges the claim on the merits. The EEOC argues that Hardiman has failed to support the adverse employment action and comparator elements of her prima facie case. In the alternative, the EEOC further argues that Hardiman has not shown that the help it provided was a pretext for discrimination.

  A.  **Adverse Employment Action**

Beginning with the adverse employment action element, Hardiman does not claim that the EEOC terminated her or even disciplined her because of the fraught 2015 Windows 7 migration. Rather, she asserts that the EEOC did not provide her with enough support for the project due to her race and sex. In response, the EEOC asserts that, as a matter of law, an employee does not suffer an adverse employment action when she receives insufficient assistance from her employer. That's an overstatement; employment discrimination law does not draw such a stark line. Whether an action fits neatly into a category of "adverse" actions is not essential; what matters is whether an employer caused a "material difference in the terms and conditions of employment." *See Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006). One can imagine a scenario in which an employer, motivated by animus, saddles an employee with extra work and ignores her pleas for

13

help. *See id.* (requiring an employee to work 25% longer than she did under a previous supervisor was a material change in employment). But that is not what happened here.

Hardiman concedes that on the first day of the migration, OIT sent a contract technician and a technician from its Milwaukee office to assist her. Although she complains that OIT sent additional help only after she requested assistance, she also does not dispute that OIT made seven of its staff available as remote technical support. And she further does not dispute that when she asked for help, OIT sent an additional, local technician, extended the contracts of the two original technicians, and added four additional remote technical staff to help. Finally, Hardiman admits that OIT provided additional technical support for a month after the migration. Based on these facts, no reasonable juror could find that the EEOC caused a material change in Hardiman's employment by withholding assistance. To the contrary, correspondence between OIT and Hardiman during the migration shows that the EEOC bent over backwards to help Hardiman.[5] Providing Hardiman with the help she requested cannot support an inference of discrimination.

To be sure, that help was not enough to keep Hardiman from feeling overwhelmed. At least one OIT employee recognized that Hardiman was in over her head with the migration project. And Hardiman was certainly dissatisfied with the timing, quality, and amount of assistance she received. Hardiman's discontent with the form of the help that the EEOC provided, however, does not change the undisputed fact that the EEOC provided her with a substantial amount of assistance with the migration project after she asked for it. "[U]nhappiness does not an adverse employment action make." *McKenzie v. Illinois Dep't of Transportation*, 31 F. App'x 922, 925 (7th Cir. 2002). A temporary change in job responsibilities due to understaffing, while perhaps frustrating, is not a

---

[5] This evidence also stands in sharp contrast to the allegation in Hardiman's Amended Complaint that "she received only one additional technician" to assist with the migration. Compl. ¶ 13, ECF No. 19.

material change that amounts to discrimination. *See Godin v. Whirlpool Corp.*, 132 F. App'x 661, 664 (7th Cir. 2005). Hardiman's claim of discrimination based on the EEOC's alleged failure to assist her does not pass muster.

That leaves Hardiman's remaining claims of discrimination: that Bowman did not invite her to an employee recognition luncheon, that the EEOC provided her with inadequate office space, and that the EEOC did not provide her with paid training that it provided to Wojtusik. The first two grievances reflect trivial "inconvenience[s]," rather than material changes in employment terms that support Title VII claims. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004). "'[N]ormally petty slights, minor annoyances, and simple lack of good manners' do not constitute adverse employment actions." *Formella v. Brennan*, 817 F.3d 503, 515 (7th Cir. 2016) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

As for Hardiman's claim that the EEOC did not provide her with paid training, such conduct can rise to the level of an adverse employment action in some circumstances. For example, depriving a plaintiff of "building blocks for . . . a promotion" could materially affect her employment. *Bryson v. Chicago State Univ.*, 96 F.3d 912, 917 (7th Cir. 1996). On the other hand, preclusion from training is not indicative of discrimination unless it materially affects employment opportunities. *See Smith v. Chief Judge of Cir. Ct. of Cook Cnty.*, No. 17-CV-08341, 2021 WL 767624, at *7 (N.D. Ill. Feb. 26, 2021), *aff'd*, No. 21-1544, 2022 WL 1238449 (7th Cir. Apr. 27, 2022) (collecting cases).

In her deposition, Hardiman testified that the EEOC denied her requests for compensation for training opportunities that she pursued. Missing from Hardiman's testimony, however, is any mention of the content of these trainings, their effect on her employment opportunities, or even whether the EEOC authorized Hardiman to pursue these trainings. At the summary-judgment

15

stage, Hardiman bears the burden of presenting evidence sufficient to permit an inference of a material change in employment. *See McKinney*, 866 F.3d at 807 ("The plaintiff carries the initial burden of establishing a prima facie case of discrimination[.]"). In other words, Hardiman must show that a reasonable juror could find that the EEOC's actions adversely affected her employment opportunities. Hardiman's bare-bones testimony does not satisfy that standard; it merely demonstrates she pursued training opportunities on her own accord. Having failed to show the EEOC's actions were adverse, Hardman has not presented a prima facie case of discrimination that survives summary judgment.

### B. Similarly Situated Comparator

Even if the EEOC's actions were adverse, Hardiman's migration-based claims fail for an independent reason. She has not presented evidence from which a reasonable juror could infer that race- or sex-based animus motivated the EEOC. As discussed, a plaintiff can raise an inference of discrimination by pointing to a similarly situated individual who is not of her protected class that the employer treated differently. *See Abrego v. Wilkie*, 907 F.3d 1004, 1013 (7th Cir. 2018). But Hardiman has not presented a sufficient comparator.

To support her allegations, Hardiman again relies on Wojtusik. She claims that the EEOC provided her with less assistance for the 2015 migration project than it provided to Wojtusik during an earlier migration project in 2010. Hardiman testified during her deposition that the EEOC provided Wojtusik with seven outside contractors to assist him with that project.[6] In what now appears to be a common refrain in Hardiman's presentation of evidence, she does not detail the scope, difficulty, or contents of the 2010 project. Without that information, "isolat[ing] the critical

---

[6] Wojtusik denies that he received any assistance with the 2010 migration, but again, the Court must accept Hardiman's testimony as true in resolving the EEOC's summary judgment motion. *Johnson*, 892 F.3d at 893.

independent variable of discriminatory animus" to explain the EEOC's actions is impossible. *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 549 (7th Cir. 2017). And even assuming the 2015 migration project and the unspecified 2010 migration project were materially similar, Hardiman admits that as many as eleven people ultimately assisted her with the 2015 project. She offers nothing to explain why the seven individuals who purportedly assisted Wojtusik were any more helpful than the eleven who assisted her. *See Carson v. Lake County*, 865 F.3d 526, 536 (7th Cir. 2017) (plaintiffs who did not show that other employees were treated more favorably did not establish discrimination claims). Hardiman's testimony does not satisfy either part of the comparator evidence inquiry: that Wojtusik was similarly situated to Hardiman or that the EEOC treated Hardiman any differently than Wojtusik. She therefore has not shown that the EEOC discriminated against her during the 2015 migration.

Hardiman has also failed to raise a genuine dispute of fact regarding her unequal training allegations. The only evidence to support Hardiman's claim that the EEOC paid for Wojtusik's trainings is her own testimony that she knew that Wojtusik would attend trainings and observed him with certificates after the training. Such "vague, conclusory assertions about incidents outside [Hardiman's] personal knowledge" cannot save her claims from summary judgment. *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016). True to form, Hardiman has not presented any evidence to support the inference that the EEOC paid for Wojtusik's trainings or that the trainings she pursued, as a lower grade level employee, were materially similar.

At bottom, Hardiman offers nothing to show that race-based or sex-based animus motivated the EEOC's treatment of her during the 2015 migration—even if that treatment could be characterized as adverse action. Lacking any evidence to demonstrate that the EEOC treated

her differently than anyone who was not of her race or sex, Hardiman cannot support an inference that the EEOC engaged in racial or sex-based discrimination based on the 2015 migration.

### C. Pretext

A third, independent basis forecloses Hardiman's migration-based claims: she has not shown that the EEOC's actions were pretextual. "Pretext means 'more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.'" *Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022) (quoting *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). The EEOC may have provided Hardiman with less assistance with the 2015 migration project than she desired, or even less assistance than was objectively reasonable. Neither of those considerations are relevant, however, even if true. Only the honesty of the EEOC's beliefs bears on pretext. *Id.* at 435-36. Hardiman offers no "weaknesses, implausibilities, inconsistencies, or contradictions" to show that the EEOC's responses were "unworthy of credence." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (quoting *Boumehdi*, 489 F.3d at 792). And on its end, the EEOC offers many pages of email correspondence addressing Hardiman's concerns. Hardiman does not present any evidence that the EEOC's responses to her requests were even unreasonable, much less dishonest. She therefore cannot show that the EEOC's actions were a pretext for discrimination.

### IV. Retaliation

In her amended complaint, Hardiman also alleged that the EEOC retaliated against her by, among other things, failing to promote her in retaliation for her complaints about discriminatory treatment. In its memorandum supporting summary judgment, the EEOC argues that any protected activity upon which Hardiman's complaint was based must have occurred before Hardiman filed her EEO complaint, and that Hardiman has not described any protected activity that occurred prior to 2015.

18

It is unfathomable that, of all parties, the EEOC would not recognize that a plaintiff who alleges retaliation for having filed an EEO complaint need not file a second complaint to sue for that retaliation. *See, e.g.*, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013). Perhaps recognizing this well-established principle, Hardiman responds that the EEOC retaliated against her for filing her EEO complaint (although notably, without citing to any caselaw or to the record to support the argument). Specifically, she explains in her opposition to summary judgment that "she has been retaliated against as after she filed her [EEO] Complaint she has not been promoted or considered for promotion." Pl.'s Memo in Opp'n at 5, ECF No. 66. That explanation notwithstanding, the EEOC doubles down in its reply brief. The EEOC again emphasizes the timing of Hardiman's EEO complaint and maintains that Hardiman did not "specify in her brief, what if anything, she did that constituted protected Title-VII activity." Def.'s Reply at 5, ECF No. 73. On those points, the EEOC is wrong on both the facts and, stunningly, the law.

Nevertheless, the EEOC argues that Hardiman also does not explain how it retaliated against her. With that point, the Court agrees. Hardiman does not support her claim that the EEOC failed to promote her in response to her EEO complaint. She cites to no evidence in the record that would show that her EEO complaint was the but-for cause of her non-promotion. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Hardiman asserts that the GS-12 IT position remains open, but that fact alone cannot support a retaliation claim. In the absence of any evidence that the EEOC promoted other employees who did not complain of discrimination, a reasonable juror would not be able to connect the dots. *See Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (explaining that a plaintiff must present evidence that shows, among other things, that she was treated less favorably than similarly situated employees to support a prima facie case of retaliation). The Court therefore grants summary judgment on Hardiman's retaliation claim.

19

\* \* \*

Hardiman cannot pursue any Title VII claims based on her 2010 selection for promotion because they are time barred. The same cannot be said of her Title VII claims based on unequal compensation; Hardiman has provided evidence sufficient for a reasonable juror to find that the EEOC continuously paid her less than an employee with similar qualifications and duties but a different race and gender.

The rest of Hardiman's claims, however, do not survive summary judgment. Some of the actions that Hardiman complains of were mere inconveniences and the rest did not materially affect the conditions of her employment. And in any case, no reasonable juror could find that either race- or sex- based discrimination or retaliation motivated the EEOC's decisions. Accordingly, the Court grants in part and denies in part the defendant's motion for summary judgment.

Dated: March 15, 2023

John J. Tharp, Jr.
United States District Judge